In the Matter of the Application of CHARLOTTE PARKER, Relator, for a Writ of Habeas Corpus for the Release of MARION BLANCHARD from the Rome State School, against CHARLES BERNSTEIN, as Superintendent of the Rome State School for Mental Defectives, Defendant.

County Court, Oneida County, May 26, 1925.

Incompetent persons — girl over sixteen years of age was committed to Albion State Training School following conviction as vagrant and common prostitute — she was transferred to State School for Mental Defectives at Rome on order of county superintendent of poor based on certificates of doctors — transfer was apparently made under Mental Deficiency Law, § 23 — transfer was illegal — transfer must be made under Mental Deficiency Law, §§ 24, 28 and 30 — prisoner remanded.

A transfer of a girl over sixteen years of age who was committed to the Albion State Training School following conviction for vagrancy and common prostitution, which transfer was made on an order signed by the county superintendent of the poor based on certificates of doctors and without notice or hearing, apparently in conformity with section 23 of the Mental Deficiency Law, was illegal.

The transfer of a girl over sixteen years of age who has committed a crime, must be made under sections 24, 28 and 30 of the Mental Deficiency Law, upon notice in proceedings before a magistrate.

While the girl is discharged from detention at the State School for Mental Defectives at Rome, she is remanded to the Albion State Training School to complete the period of her sentence.

HABEAS CORPUS proceeding.

*John C. Smith,* for the relator.

*Albert Ottinger, Attorney-General [M. J. Kaman, Deputy Attorney-General,* of counsel], for the defendant.

HAZARD, J.:

Marion Blanchard was convicted in a Court of Special Sessions in the city of Syracuse in the county of Onondaga on the 14th day of November, 1922, as a vagrant and common prostitute, and sentenced to the Albion State Training School for a term of three years unless sooner discharged. In October, 1924, one Flora P. Daniels, understood to be the superintendent of the Albion State Training School, made a petition that the prisoner be committed to the Rome State School. Accompanying the petition was the affidavit of two physicians who say they are qualified medical examiners of mental defectives and who certified that Marion Blanchard is mentally defective and a proper subject for custody and training in some institution for mental defectives. On November 20, 1924, the superintendent of the poor of Onondaga county signed what

purports to be an " order of commitment " but which is really in the form of a request that Marion Blanchard be admitted to the Rome State School. She was thereupon admitted to that institition and has since been there.

The procedure seems to have been taken under and pursuant to section 23 of the Mental Deficiency Law. None of the steps provided for in sections 24 (as amd. by Laws of 1921, chap. 483), 28 and 30 of that law seems to have been taken. The commitment was not authorized by any magistrate; no notice was given to the prisoner nor was any hearing had.

The commitment and detention thereunder are attacked upon two grounds: *Firstly*, that the proceedings were illegal, and, *secondly*, upon the ground that the defendant is not mentally defective. The latter specification would come under section 35 of the Mental Deficiency Law (as amd. by Laws of 1921, chap. 483); but I think we must first decide the other question as to whether the commitment was legal or otherwise, because, if it was illegal, the prisoner is entitled to be discharged, irrespective of whether she is mentally deficient or otherwise.

The Mental Deficiency Law, particularly that part thereof beginning with section 23 and dealing with commitments, is, unfortunately, far from clear and explicit. Much of it, notably section 24, is involved and its meaning obscure. It is to be observed that sections 24, 24-a, 28, 29, 30 and 34 all provide for a proceeding before a magistrate. Taken together, they seem to provide a more or less coherent scheme for a proceeding to commit a person alleged to be mentally defective and who is held under a criminal charge, to some institution for the care of mental defectives. As above pointed out, the procedure involves a hearing before a judge, and section 28 involves the service of a notice, and section 30 provides for an order of commitment to be made by a judge. None of these things was done in the case at bar.

It is quite apparent that the commitment in this case was made upon the theory that section 23 of the statute provides in itself a complete code and procedure for the commitment of alleged mental defectives when such commitment is or is to be made by the county superintendent of the poor. It is to be observed that the set of blanks furnished by the State Commission for Mental Defectives has a printed copy of section 23 and that section only, except section 25 dealing with the qualification of examiners; and that the procedure as indicated by the blanks furnished, does not contemplate any order by any judge or any notice to anybody, or any hearing. There is provided only a petition, a certificate for the two examiners, °a statement of the financial condition of the alleged defective and an

order of commitment to be signed by the superintendent of the poor.

The question which I think is here squarely presented is as to whether section 23, in itself and standing alone, furnishes authority for the superintendents of the poor in the respective counties in the State to commit mental delinquents without any more form or ceremony than upon a certificate of two duly qualified examiners of mental defectives. That it does contain such authority seems, for the reason stated, to have been assumed by the State Commission for Mental Defectives.

So far as I am able to learn, the question is a new one. No authority on the subject has been presented by either side. Section 23, like most of the other sections which we are considering, lacks clarity and directness. That it was intended to give to the various superintendents of the poor of the State greater power and authority than the subsequent sections of the chapter give to the magistrates of the State is seriously to be doubted. Whether it was intended to apply at all in cases where the alleged mental defective was in custody under a criminal charge, is also to be doubted. If it was, the elaborate pronouncements of section 24 (as amd. by Laws of 1921, chap. 483) would seem to be superfluous. Incidentally, section 243 of the State Charities Law (as added by Laws of 1920, chap. 774) was in force at the time, and might have been invoked, but apparently the provisions of that section are not mandatory.

It would seem to me that section 24 clearly was intended to cover a case like this, as the prisoner was " over sixteen years of age charged with a misdemeanor."

I am compelled very seriously to doubt if section 23 was intended to apply at all to a person confined on a criminal charge. If it was the intention of the lawmakers that that section should provide, even in the case of the person not held on a criminal charge, for his commitment without notice or hearing and by a county superintendent of the poor, I am greatly doubtful of its constitutionality. There is nothing about it that savors of " due process of law." However, whether it might apply in a case where no criminal charge was involved, we are not bound here to decide, because there was a criminal charge and a conviction involved in this case, and I think I must decide that it, therefore, clearly comes under the provisions of section 24 and the following sections.

My conclusion, after the study of those sections, is that under section 28 a notice must be given, and I am compelled to decide, upon the papers before me, that the proceedings here were defective in that no notice was given. I also believe that under section 30 the proceeding must have been before a magistrate and that,

therefore, the attempted commitment to the Rome State School by the superintendent of the poor of Onondaga county was invalid.

The rights involved are serious ones in this case. The attempted commitment was the equivalent of imprisonment for life, and I cannot believe that the Legislature intended to make it possible to visit so tremendous a penalty upon any person, mentally defective or otherwise, without giving him a notice and a chance to be heard, in other words his " day in court."

While I am strongly inclined to suspect and do believe that the prisoner is mentally defective and a proper subject for restraint, I am compelled to decide that her present detention is illegal.

The defendant's term at the Albion School has not expired, and while I am prepared to decide that her present confinement at the Rome School is illegal, inasmuch as the whole proceedings relating to the transfer from one institution to the other are held to be void, and the final order to be prepared will discharge her from her detention at Rome, it should, I think, remand her to the Albion School. (Civ. Prac. Act, § 1256; *People ex rel. Post* v. *Grant*, 50 Hun, 243, 246. See, also, *People ex rel. Devoe* v. *Kelly*, 97 N. Y. 213; *Ex parte Badgley*, 7 Cow. 472; *People ex rel. Beldstein* v. *Thayer*, 121 Misc. 745.)

An order may be prepared accordingly.