# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 03-2785

_____

United States of America,        *
                                    *

        Appellee,        *

                                    *     Appeal from the United States

       v.              *     District Court for the

                                    *     District of South Dakota.

David William Dorsch,        *

                                    *         [PUBLISHED]

        Appellant.       *

_____

Submitted: February 10, 2004
Filed: April 13, 2004

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

David William Dorsch entered a conditional plea of guilty to two counts of possession of a firearm by a prohibited person, 18 U.S.C. § 922(g)(4) (2000), after the district court[1] denied his motion to dismiss the indictment. On appeal, Dorsch argues that he has never been committed to a mental institution, as required in order to be a "prohibited person" under § 922(g)(4). We affirm the district court's judgment.

_____

[1]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota.

Section 922 makes it unlawful for any person "who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to . . . possess in or affecting commerce, any firearm or ammunition." § 922(g)(4). Mr. Dorsch was arrested in January 2003 by a sheriff's deputy after he arrived at a county water board meeting intoxicated and carrying a concealed handgun. Two days later federal agents conducted a warranted search of his residence and seized over 30 firearms. He was subsequently indicted for violation of § 922(g)(4) when it was learned that he had been involuntarily "committed" to the South Dakota Human Services Center for a period of approximately three weeks in 2001. Dorsch argues that his involuntary commitment under South Dakota law was insufficient to meet the statutory definition of "committed to a mental institution" contained in § 922(g)(4).

We review de novo Dorsch's challenge to the district court's legal conclusion that Dorsch's previous involuntary commitment met the requirements of § 922(g)(4). United States v. Whiton, 48 F.3d 356, 358 (8th Cir.), cert. denied, 516 U.S. 886 (1995). Section 922 does not define the phrase "committed to a mental institution." Regulations promulgated under § 922 define "committed to a mental institution" as "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority." 27 C.F.R. § 478.11. The regulations further specify that involuntary commitments are included within the definition, but persons in a mental institution for observation or on a voluntary basis are not within the purview of the statute. Id. Although we construe § 922(g)(4) under federal law, we seek guidance from the law of the state where the prior commitment occurred as to the meaning of commitment. Whiton, 48 F.3d at 358.

In South Dakota, "[a] person is subject to involuntary commitment if: (1) [t]he person has a severe mental illness; (2) [d]ue to the severe mental illness, the person is a danger to self or others; and (3) [t]he individual needs and is likely to benefit from treatment." S.D. Codified Laws § 27A-1-2 (Michie 1999). South Dakota law provides various procedural protections before a person can be involuntarily

2

committed to a mental facility. A person suspected of being in need of immediate intervention for mental illness reasons must be examined by a qualified health professional within 24 hours of being taken into custody to determine if the person meets the requirements listed above. S.D. Codified Laws § 27A-10-6 (Michie 1999 & Supp. 2000). If the board determines the person meets the requirements, the board must hold an involuntary commitment hearing within five business days. § 27A-10-8.

Counsel will be appointed to represent a person facing an involuntary commitment if he does not have retained counsel. S.D. Codified Laws § 27A-11A-7 (Michie 1999) ("In no instance may a person not be represented by counsel."). The person is allowed to seek an independent examination prior to the hearing, § 27A-10-5, and to present evidence and subpoena and cross-examine witnesses during the hearing, § 27A-11A-11. Following the hearing, the board may order involuntary commitment to a mental facility for not more than 90 days only if the board finds, by clear and convincing evidence and supported by written findings of fact and conclusions of law, that the person meets the criteria in § 27A-1-2, the person needs and will likely benefit from the proposed treatment, and involuntary commitment is the least restrictive treatment alternative available. § 27A-10-9.1. An involuntarily committed person may appeal any final board order pursuant to South Dakota's Administrative Procedures Act, § 27A-11A-25, and is entitled to the benefits of a writ of habeas corpus, S.D. Codified Laws § 27A-12-32.2 (Michie 1999).

Dorsch does not claim that he was denied any of the above-enumerated procedures. Rather, he claims that the 90-day period is an observation period, rather than a treatment period, and that the result in this case should be similar to that in United States v. Hansel, 474 F.2d 1120 (8th Cir. 1973). On appeal of Hansel's conviction for possession of a firearm by a prohibited person, we held that Hansel was not committed to a mental institution under Nebraska law, but rather was only temporarily hospitalized for observation. Id. at 1123. Under Nebraska law in effect at the time, a person could be hospitalized for an initial observation period for up to

3

60 days, and could be committed only if, based on the observation, the superintendent of the hospital determined that the person was indeed mentally ill and so certified to the County Board of Mental Health. Id. (explaining Neb. Rev. Stat. § 83-328 (1971) (repealed 1976)). After observing Hansel for a period of time, Hansel's doctor determined that he did not suffer from a serious mental disorder and Hansel was subsequently released. Id. at 1122.

By contrast, the observation period under South Dakota law is the initial five-day period prior to the hearing. The county board is required to determine at the time of the hearing whether the person has a severe mental illness, which the county board determined to be true as to Dorsch. Thus, unlike Hansel, who was never determined to be mentally ill or in need of hospitalization, the South Dakota county board found that Dorsch was mentally ill and that involuntary commitment to a mental facility was the least restrictive treatment available for him. This determination followed a hearing, during which Dorsch was represented by counsel, was given the opportunity to present evidence and cross-examine witnesses, and during which a physician testified that Dorsch was mentally ill and met the requirements of the statute. We hold that Dorsch was committed to a mental institution as contemplated by § 922(g)(4) and 27 C.F.R. § 478.11.

Dorsch also claims that an involuntary commitment under South Dakota law is not a commitment for purposes of § 922(g)(4) because the state legislature did not intend adverse collateral consequences to flow from an involuntary commitment. See Matter of Woodruff, 567 N.W.2d 226, 228 (S.D. 1997) (holding that a direct appeal from an involuntary commitment was moot where appellant was no longer committed and there were no collateral consequences stemming from the prior commitment); see also § 27A-12-1.2 ("Notwithstanding any other provision of law, no person may be deemed incompetent to manage his affairs, to contract, to hold professional, occupational or other licenses, to marry and obtain a divorce, to register and vote, to make a will, or to exercise any other rights or privileges accorded to citizens of South

4

Dakota solely by reason of his detention, admission or commitment under this title."). State law is relevant in determining whether a person has in fact been committed to a mental institution. The consequences of that commitment for purposes of § 922(g)(4) however have been determined by Congress to include a prohibition on possessing a firearm. One of the purposes of enacting the federal firearms ban was to establish national uniformity in determinations of whether a person is within a category of persons prohibited from possessing firearms. See United States v. Chamberlain, 159 F.3d 656, 660 (1st Cir. 1998). Once we determine that a defendant has been committed to a mental institution, state legislative intent is irrelevant; we are bound by Congress's determination of the consequences that flow from that commitment, as is the State of South Dakota.

We also reject Dorsch's contention that his alleged inability to seek any judicial review of his commitment under either state or federal law precludes its use as a predicate element for his § 922(g)(4) conviction. Dorsch was committed to the mental facility for only three weeks. As such, he argues that even had he sought to appeal his commitment under South Dakota law, his appeal would have been mooted by his release under Woodruff, and there is no way an appeal could have been completed in such a short time. Thus, he claims that his commitment cannot be used as the predicate element for his § 922(g)(4) conviction if he cannot challenge its validity. We disagree.

The Supreme Court has held that the invalidity of a prior felony is not a defense to a § 922(g)(1) charge of being a felon in possession of a firearm, even if the prior conviction violated the defendant's Sixth Amendment rights. See Lewis v. United States, 445 U.S. 55, 62-63 (1980). In so holding, the Court noted that a convicted felon was not without relief because the defendant could have challenged the prior conviction under state law or sought federal relief from the firearm disability. Id. at 64. Thus, if Dorsch was truly prevented from seeking review of or relief from the administrative proceeding that resulted in his involuntary commitment, due process

may well prevent use of his prior commitment to a mental institution from serving as the predicate element of his § 922(g)(4) conviction. Cf. United States v. Mendoza-Lopez, 481 U.S. 828, 837 (1987) ("If the statute [criminalizing reentry of an alien following deportation] envisions that a court may impose a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process.").

We need not decide this issue, however, because, contrary to Dorsch's assertions, he could have sought an appeal of his commitment, see § 27A-11A-25, or a writ of habeas corpus, see § 27A-12-32.2, but he did neither. Woodruff does not aid Dorsch because its holding was predicated on the lack of collateral consequences attaching to the appellant's commitment. See 567 N.W.2d at 228. Had Dorsch appealed his order of commitment, he could have raised his inability to possess a firearm pursuant to § 922(g)(4) as a collateral consequence, thereby preventing his appeal from being mooted á la Woodruff. Id. ("[T]here are exceptions to mootness . . . when there are collateral consequences affecting the rights of a party."). Dorsch's due process rights are not violated merely because he did not avail himself of the state's appeal procedure.

The judgment of the district court is affirmed.

_____

6