764 N.W.2d 105 (2009)
277 Neb. 611
Joseph D. GALLEGOS, Appellant,
v.
Timothy F. DUNNING, Douglas County Sheriff, Appellee.
No. S-08-221.
Supreme Court of Nebraska.
April 17, 2009.
*107 J.K. Harker, P.C., L.L.O., for appellant.
Donald W. Kleine, Douglas County Attorney, and Renee L. Mathias for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.
HEAVICAN, C.J.

INTRODUCTION
Joseph D. Gallegos appeals from the district court's order affirming the county court's denial of his application to register a handgun. We reverse, and remand with directions.

FACTUAL BACKGROUND
On October 9, 2001, Gallegos, a veteran, voluntarily sought treatment at a veterans hospital in Omaha, Nebraska. Gallegos was examined by Dr. Michelle Jorgensen. Following this examination, Jorgensen completed and filed a petition before the Mental Health Board of the Fourth Judicial District (MHB). In that petition, Jorgensen averred that she believed Gallegos to be mentally ill and she prayed for "a hearing to determine whether [Gallegos] is a mentally ill dangerous person."
The petition was signed by Jorgensen and by a deputy Douglas County Attorney and alleged that immediate custody of Gallegos was necessary. Attached to the petition was an intake form completed with respect to Gallegos. On that form, Jorgensen indicated that Gallegos had both suicidal and homicidal thoughts, apparently as a result of the breakup of his marriage. According to Jorgensen, although Gallegos acknowledged such thoughts, he indicated that he would not act on them because of his religious beliefs and because he did not want to be incarcerated. The form also noted that Gallegos had suffered from posttraumatic stress disorder for 10 years and from depression.
That same day, October 9, 2001, the MHB issued an order appointing another doctor at the veterans hospital, Dr. William Marcil, as Gallegos' custodian "with the understanding that [Gallegos] is to be held in [Marcil's] custody ... for care and treatment up to a period of 7 days from the date of this order." A hearing was scheduled for October 12.
On October 12, 2001, Gallegos filed before the MHB a request for a 90-day continuance so that he could complete inpatient treatment at the veterans hospital. In signing that form, Gallegos agreed that if he did not "fully comply with [his] treatment plan, the County Attorney may pursue civil commitment against [him]." On October 16, Gallegos' request was granted, and the petition was "continued for 90 days on recommendation of ... Marcil ... for reason the subject agrees to treatment at the mental hygiene clinic and [posttraumatic stress disorder] Clinic." On January 16, 2002, the MHB petition filed against Gallegos was dismissed.
Several years later, on December 26, 2006, Gallegos obtained a firearms certificate and purchase permit. On January 3, 2007, he presented a federal firearms application to the Omaha Police Department (OPD). That application was initially denied, because an investigation uncovered the October 9, 2001, MHB order on Gallegos' instant criminal history check. OPD then completed an investigation into Gallegos' application. OPD contacted the physician responsible for Gallegos' followup *108 treatment, who provided documentation indicating that Gallegos was not a danger to himself or others. On January 19, OPD granted Gallegos' application and issued Gallegos his gun registration.
On February 1, 2007, Gallegos presented a federal firearms application, this time to Timothy F. Dunning, the Douglas County sheriff, for approval. At that time, the investigating deputy also checked Gallegos' instant criminal history check. In the course of that check, the deputy noted that Gallegos' initial application had been denied by OPD. The deputy then asked to see Gallegos' firearms certificate, which she proceeded to confiscate. The deputy also refused to issue Gallegos a gun registration. The deputy indicated that Gallegos' "[MHB] Order with hospital stay" was a "Federal Handgun Prohibitor."
Gallegos appealed the denial to the Douglas County Court. The county court affirmed the sheriff's decision and denied Gallegos' application. The district court affirmed. Gallegos appeals.

ASSIGNMENTS OF ERROR
On appeal, Gallegos assigns that the district court erred in affirming the county court's finding that he had been committed to a mental institution for the purposes of 18 U.S.C. § 922(g)(4) (2006) and thus was ineligible to hold a firearms certificate.

STANDARD OF REVIEW
Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[1]

ANALYSIS
The sole question presented by this appeal is whether Gallegos was committed to a mental institution for the purposes of 18 U.S.C. § 922(g)(4). Section 922(g) of the Gun Control Act of 1968 provides:
It shall be unlawful for any person ...
(4) who has been adjudicated as a mental defective or who has been committed to a mental institution ...
to ... possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
In this case, there is no argument that Gallegos has ever been "adjudicated as a mental defective." As such, we are concerned only with whether Gallegos has been "committed to a mental institution." The Gun Control Act provides no definition for this term, but 27 C.F.R. § 478.11 (2008) states that
[c]ommitted to a mental institution [means a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.
(Emphasis omitted.)
Whether a person has been committed to a mental institution within the meaning of § 922(g)(4) is a question of federal law.[2] We may, however, seek *109 guidance from Nebraska law as to the meaning of "commitment."[3] The Eighth Circuit, in United States v. Hansel,[4] concluded that because the defendant was not committed under state law, he was not prohibited from possessing a firearm.[5] The Fifth Circuit has also adopted this approach.[6]
Under the version of the Nebraska Mental Health Commitment Act (MHCA)[7] in effect at the time of Gallegos' hospitalization, any person who believed another might be mentally ill and dangerous could communicate that belief to the county attorney.[8] If the county attorney agreed, he or she could file a petition with the local board of mental health stating such belief[9] and indicating whether the subject of the petition should be immediately taken into custody.[10]
Assuming it was necessary to take someone into immediate custody, a warrant would be issued for that purpose.[11] Under this circumstance, Nebraska law required the subject to be examined by a mental health professional within 36 hours unless the subject had been examined within the previous 24 hours.[12] A hearing was required
to determine whether there [was] clear and convincing proof that the subject of a petition [was] a mentally ill dangerous person and that neither voluntary hospitalization nor other alternatives less restrictive of his or her liberty than a mental-health-board-ordered treatment disposition [were] available or would suffice to prevent the harm described in section 83-1009 [a substantial risk of harm to the subject or to others].[13]
After such a hearing, the governing mental health board could either conclude there was not clear and convincing evidence that a subject was a mentally ill dangerous person, and dismiss the petition,[14] or could conclude there was clear and convincing evidence that the subject was a mentally ill dangerous person.[15] If the subject was found to be mentally ill, and if the board made a determination that voluntary hospitalization would be sufficient to prevent any harm, then the board could dismiss the petition and unconditionally discharge the subject or suspend the proceedings for no more than 90 days so the subject could undergo voluntary treatment.[16] But if the board concluded that "neither voluntary hospitalization nor other treatment alternatives less restrictive of the subject's liberty [were] available," the board was required to enter an order providing for treatment of the subject.[17]
*110 We conclude that Gallegos was not committed within the meaning of the MHCA. While Gallegos was initially hospitalized under an MHB order, the MHB never made any finding that Gallegos was a mentally ill dangerous person. Nor did the MHB ever find that "neither voluntary hospitalization nor other alternatives less restrictive of his ... liberty than a mentalhealth-board-ordered treatment disposition" were necessary.[18] Instead, the MHB granted Gallegos' request that he be allowed to undergo voluntary treatment and eventually dismissed the petition filed against him.
Our conclusion that Gallegos was not committed is consistent with the exclusions contained in the definition of "committed to a mental institution" as set forth in § 478.11 of the Code of Federal Regulations. That definition notes that a "formal" commitment is required. As we noted above, Gallegos was not committed within the meaning of Nebraska law. No hearing was held, there was no finding that Gallegos was a mentally ill dangerous person, and Gallegos was not ordered by the MHB to undergo any treatment.
To the extent that Gallegos' 3-day hospitalization prior to his request to undergo voluntary hospitalization could be considered a "commitment," such was also unaccompanied by any hearing or finding that Gallegos was a mentally ill dangerous person. Thus, we conclude that it also was not a "formal" commitment as required by § 478.11.
Moreover, § 478.11 excludes from its definition "a person in a mental institution for observation." According to the MHCA, unless an examination had already taken place within the preceding 24 hours, a subject of a mental health petition is to be examined within 36 hours after he or she is taken into custody, and prior to his or her hearing. In this case, under the MHCA, the purpose of Gallegos' initial 3-day hospitalization could be characterized as observational in nature and, as such, not considered "committed to a mental institution" under the definition set forth in § 478.11.
We conclude that Gallegos was not "committed to a mental institution" within the meaning of § 922(g)(4). As such, the district court erred when it affirmed the decision of the county court upholding the Douglas County sheriff's refusal to issue Gallegos his gun registration. We therefore reverse the decision of the district court affirming the county court's decision and remand the cause to the district court with directions to remand the matter to the county court with directions to approve Gallegos' request for a gun certificate.

CONCLUSION
We conclude that Gallegos was not committed to a mental institution for purposes of § 922(g)(4) and therefore was not prohibited from possessing a firearm. We reverse the decision of the district court and remand the cause to the district court with directions.
REVERSED AND REMANDED WITH DIRECTIONS.
MILLER-LERMAN, J., participating on briefs.
NOTES
[1] Loves v. World Ins. Co., 276 Neb. 936, 758 N.W.2d 640 (2008).
[2] U.S. v. Giardina, 861 F.2d 1334 (5th Cir. 1988); U.S. v. Dorsch, 363 F.3d 784 (8th Cir.2004); U.S. v. Whiton, 48 F.3d 356 (8th Cir.1995). See, also, United States v. Hansel, 474 F.2d 1120 (8th Cir. 1973).
[3] See, U.S. v. Giardina, supra note 2; U.S. v. Dorsch, supra note 2; U.S. v. Whiton, supra note 2.
[4] United States v. Hansel, supra note 2.
[5] Cf. U.S. v. Dorsch, supra note 2.
[6] U.S. v. Giardina, supra note 2.
[7] See Neb.Rev.Stat. § 83-1001 et seq. (Reissue 1999 & Cum. Supp. 2002) (now codified at Neb.Rev.Stat. § 71-901 et seq. (Reissue 2008)).
[8] § 83-1024.
[9] Id.
[10] §§ 83-1027 and 83-1028.
[11] § 83-1028.
[12] § 83-1029.
[13] § 83-1035.
[14] § 83-1036.
[15] Id.
[16] Id.
[17] § 83-1037.
[18] See § 83-1035.