**UNITED STATES of America,**

v.

**Theodore T. MILLER, Defendant**

No. CRIM.02–106–P–C.

United States District Court,
D. Maine.

Feb. 14, 2005.

Bruce M. Merrill, Robert J. Ruffner, Vincent, Kantz & Ruffner, Portland, ME, for Theodore T Miller (1), Defendant.

George T. Dilworth, Office of the U.S. Attorney, District of Maine, Portland, ME, for USA, Plaintiff.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT

GENE CARTER, Senior District Judge.

Defendant Theodore T. Miller is charged in a three count criminal indictment (Docket Item No. 4) with being in possession of firearms after previously having been committed to a mental institution, in violation of 18 U.S.C. §§ 922(g)(4) and 924(a)(2). Now before the Court is Defendant's Motion to Dismiss Indictment

(Docket Item No. 77). Defendant asserts that he was never previously committed to a mental institution, thus the predicate occurrence for an indictment under § 922(g)(4) is non-existent. For the reasons set forth below, the Court will deny Defendant's Motion.

## I. The 2001 New Jersey Proceedings

The only facts necessary for resolution of the present motion are those associated with Defendant's 2001 judicial proceedings in New Jersey—the proceedings that the government alleges ended in Defendant's commitment to a mental institution.

The record reflects that mental health proceedings were commenced in New Jersey, pursuant to N.J.S.A. § 30:4–27.1 *et seq.*, after Defendant allegedly threatened to kill his brother. An initial screening document was prepared by a New Jersey Certified Mental Health Screener on the morning of March 8, 2001, in which the screener opined that Defendant was dangerous to himself and to others. As a result, Defendant was separately examined by two different psychiatrists, also on March 8, 2001, and each psychiatrist independently concluded that: (1) if not committed, Defendant would be a danger to himself or others by reason of his mental illness; (2) Defendant was unwilling to be voluntarily admitted to a mental health facility; and (3) Defendant was in need of care at a psychiatric inpatient unit because other services are not appropriate or available to meet his mental health care needs.

Pursuant to the New Jersey statute, Defendant appeared before a judge of the New Jersey Superior Court the following day. The New Jersey Superior Court issued an order titled, "Temporary Order for Commitment." In the order, the court stated that "[t]he Court, upon review of the documents received, ... [finds] there to be probable cause to believe that the above named adult [Theodore Miller] is in

need of involuntary commitment in accordance with the standard set forth in N.J.S.A. 30:4–47.2m." The New Jersey Court went on to order that "[t]he above named patient [Theodore Miller] be committed to Monmouth Medical Center and/or Division of Mental Health Services pending a court hearing with respect to the issue of continuing need for involuntary commitment."

Defendant again appeared before the New Jersey Court on March 22, 2001, at which time his legal status was changed to Conditional Extension Pending Placement ("CEPP"). The change to CEPP status indicates that there was not a continuing need for Defendant's involuntary commitment, but that continued residency at the Monmouth Medical was necessary as Defendant had no other place to go at that time.

## II. The Present Motion

In order to maintain a charge under § 922(g)(4), the government must establish that a Defendant has previously been committed to a mental institution. Failure to establish this element of the crime would warrant dismissal of the indictment.

Defendant makes three challenges to the government's contention that the New Jersey proceedings constituted an involuntary commitment. First, Defendant argues that no federal court has found that proceedings under the New Jersey statute constitute an "involuntary commitment" for purposes of § 922(g)(4). Second, Defendant claims that the New Jersey court never entered a final order of commitment and instead placed him on CEPP status. Third, Defendant alleges that his brother's statements that Defendant threatened him—statements that resulted in initiation of the New Jersey proceedings—were false and only made in response to a social worker's suggestion that such allegations

were the only way to initiate state treatment for Defendant. The Court will address each of these claims in turn.

### a. Whether the New Jersey Proceedings Constitute "Involuntary Commitment"

■ Title 18 U.S.C. §§ 921, 922 does not define the phrase "committed to a mental institution." However, determination of whether a Defendant was so "committed" is a question of federal law. *See United States v. Chamberlain*, 159 F.3d 656, 658 (1st Cir.1998); *United States v. Waters*, 23 F.3d 29, 31 (2d Cir.1994); *United States v. Giardina*, 861 F.2d 1334, 1335 (5th Cir.1988). *Cf. Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 111–12, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) ("Whether one has been 'convicted' within the language of the gun control statutes is . . . a question of federal . . . law, despite the fact that the predicate offense and its punishment are defined by the law of the State.") (citation omitted). The First Circuit Court of Appeals decision in *United States v. Chamberlain*, 159 F.3d 656 (1st Cir.1998), provides guidance on the issue of whether the New Jersey proceedings resulted in Defendant being "committed to a mental institution." In *Chamberlain*, the Defendant challenged whether his five day involuntary admission to a Maine mental hospital constituted "commitment" to a mental hospital for purposes of § 922(g)(4). *Id.* at 658. Chamberlain was admitted on an involuntary basis after an application was filed pursuant to Maine law. *Id.* at 657. A licensed physician certified pursuant to Maine law that Chamberlain posed a danger to himself and others. *Id.* A judge then endorsed the application and ordered that Chamberlain be admitted to a mental hospital for no more than five days. *Id.* While at the hospital, Chamberlain was again examined, this time by a different physician. *Id.*

After his five day emergency detention, Chamberlain voluntarily admitted himself, where he remained until his release eight days later. *Id.*

In ruling on Chamberlain's challenge to his subsequent firearms conviction on the basis of the lack of a predicate "commitment" under § 922(g)(4), the First Circuit Court of Appeals stated:

The procedures followed in this case, whether denominated as an "involuntary admission" or a "commitment" by the Maine Legislature, constituted in all functional respects a "commitment" for purposes of § 922(g)(4). Chamberlain was involuntarily hospitalized based upon an application filed by a clinician at a mental hospital who stated that Chamberlain had put a loaded gun to his head and threatened his wife. Prior to admission, Chamberlain was examined by a physician who certified, as required under Maine law in order to detain Chamberlain involuntarily, that Chamberlain suffered from a mental illness and posed a danger to himself and others. A judicial officer reviewed the application and the certification of the first physician, determined that they were prepared in accordance with law, and ordered that Chamberlain be detained in a mental institution for five days. A second physician examined Chamberlain within twenty-four hours of admission and certified that Chamberlain suffered from a mental illness and posed a danger to himself and others. During the five-day emergency detention, Chamberlain was not free to go as he pleased. In all respects, then, we conclude that Chamberlain was formally "committed" to a mental institution.

*Id.* at 663.

The New Jersey statute at issue in this case is similar to the Maine statute consid-

ered in *Chamberlain.* The relevant provisions of New Jersey law, as applied to Defendant, state as follows:

A short-term care or psychiatric facility or a special psychiatric hospital shall initiate court proceedings for involuntary commitment by submitting to the court a clinical certificate completed by a psychiatrist on the patient's treatment team and the screening certificate which authorized admission of the patient to the facility; provided, however, that both certificates shall not be signed by the same psychiatrist unless the psychiatrist has made a reasonable but unsuccessful attempt to have another psychiatrist conduct the evaluation and execute the certificate.

. . .

If the court finds that there is probable cause to believe that the person . . . is in need of involuntary commitment, it shall issue a temporary order authorizing the admission to or retention of the person in the custody of the facility pending a final hearing.

N.J.S.A. §§ 30:4–27.10(a) & (g).

The procedure as applied to Defendant was in compliance with the New Jersey statute and N.J. Ct. R. 4:74–7. A certified mental health screener initiated the proceedings and two licensed psychiatrists examined Defendant and each concluded that Defendant posed a safety risk to himself and others. The New Jersey Superior Court found probable cause to believe that Defendant was in need of involuntary commitment, and Defendant was in fact so committed for a period of thirteen days.

Accordingly, as in *Chamberlain,* the Court finds that Defendant was committed to a mental institution for purposes of § 922(g)(4).[1]

### b. Whether a Final Order of Commitment was Ever Ordered

Defendant next challenges the application of § 922(g)(4) to him because the New Jersey Superior Court changed his status to CEPP at the March 23, 2001, hearing to determine whether there was a continuing need for involuntary commitment. The New Jersey Court's decision to change Defendant's status to CEPP is irrelevant because under the rationale of *Chamberlain,* Defendant Miller had already been "committed" to a mental institute for purposes of § 922(g)(4) at the time his status was changed. Accordingly, this argument is without effect.

### c. Whether the Brother's Statement Warranted Initiation of the New Jersey Proceedings

Defendant's final challenge to his committal under New Jersey law revolves around his contention that statements made by Defendant's brother—the statements that initiated the New Jersey proceedings—were not true. Defendant's brother has submitted an affidavit to this Court stating that the statements he made about Defendant threatening his life were only made in an effort to secure treatment and help for Defendant. Affidavit of John H. Miller, Jr. (attached as Exhibit F to Defendant's Motion to Dismiss Indictment) ¶¶ 6–10.[2] The Defendant may not now

1. Any distinctions between the Maine and New Jersey statutory requirements for involuntary committal do not warrant a departure from the holding in *Chamberlain.* In both cases, the Defendant was committed against his will for a period of time and was not free to leave during that period.

2. Defendant's request for a hearing is moot in view of this Court's denial of a collateral attack upon the circumstances surrounding the initiation of the underlying New Jersey proceedings. The Court is able to resolve this matter based upon the written submissions of the parties.

challenge the accuracy of statements made over three years ago that resulted in a judicial determination. By the terms of its March 9, 2001, Order, the New Jersey Court found that the brother's statements, along with the reports prepared by two psychiatrists, warranted a finding of probable cause that Defendant needed involuntary committal. The contents of the psychiatric reports, alone, justify the Court's determination that committal was warranted at that time.

### III. Conclusion

It is **ORDERED** that Defendant's Motion to Dismiss Indictment be, and it is hereby, **DENIED**. It is **FURTHER ORDERED** that Defendant's Request for Appointment of a Guardian *Ad Litem* be, and it is hereby, **DENIED** and Defendant's request for a hearing be, and it is hereby, **DENIED**.