UNITED STATES of America,
Plaintiff–Appellee,

v.

Vincent B. GIARDINA,
Defendant–Appellant.

No. 88–3080
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1988.

Roma A. Kent, John T. Mulvehill, Federal Public Defender, New Orleans, La., for defendant-appellant.

Vincent B. Giardina, Belle Chase, La., pro se.

Walter F. Becker, Jr., Robert J. Boitmann, John Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before POLITZ, KING, and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

This appeal asks: Had Vincent B. Giardina been "committed to a mental institution," as that term is used in 18 U.S.C. § 922(g)(4), prior to his purchase of a pistol? Concluding that he had not been, we reverse the district court and vacate his conviction and sentence.

*Background*

On May 14, 1984, Giardina was examined by Dr. Sank Nguyen, a staff psychiatrist at the New Orleans Mental Health Clinic. Perceiving an emergency, Dr. Nguyen signed a Physician's Emergency Certificate pursuant to which the police took Giardina to Charity Hospital in New Orleans. Upon arrival at "Big Charity," Giardina was examined by Dr. Dennie E. Franklin, a deputy coroner of Orleans Parish, who executed a Coroner's Emergency Certificate. Giardina was detained at the hospital for treatment for two weeks, the maximum period permitted by Louisiana law under the two certificates. Giardina was then released. No further hospitalization or legal proceedings resulted.

In March of 1987 Giardina purchased a .38 caliber derringer from Sea Star Pawn Shop in Harvey, Louisiana. In conjunction with this purchase Giardina signed the Alcohol, Tobacco and Firearms Form 4473, declaring that he had never been committed to a mental institution. In July 1987, Giardina again purchased the same pistol from The Pawn Shop in Marrero, Louisiana. He again completed Form 4473, stating that he had never been committed to a mental institution.

Giardina was indicted on two counts of making false statements to a federally-licensed firearms dealer, 18 U.S.C. § 922(a)(6), and two counts of receiving and possessing a firearm after having been committed to a mental institution, 18 U.S.C.

§ 922(g)(4). The government dismissed the false statement counts and moved *in limine* for a judicial determination that Giardina had been committed to a mental institution. The district court granted the motion, ruling that Giardina had been so committed. Giardina then entered a conditional plea of guilty under Fed.R.Crim.P. 11(a)(2), reserving his right to a review of the trial court's ruling on the *in limine* motion.

### Analysis

The sole issue is whether Giardina's involuntary hospitalization constituted a commitment to a mental institution under 18 U.S.C. § 922(g)(4). Giardina maintains that he was not committed and that Charity Hospital of New Orleans does not qualify as a mental institution. We find merit in the first contention; we do not reach the second.

The criminal statute at issue, 18 U.S.C. § 922(g)(4), prescribes that:

It shall be unlawful for any person—(4) who has been adjudicated as a mental defective or has been committed to any mental institution, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been

shipped or transported in interstate or foreign commerce.[1]

The statute does not define "committed," and there is no dispositive jurisprudence. There are, however, analogous cases which focus on the meaning of conviction under § 922, and which reflect the dynamics of state and federal law interaction inherent in that determination.

In *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 111–12, 103 S.Ct. 986, 991, 74 L.Ed.2d 845 (1983), the Supreme Court noted that:

Whether one has been "convicted" within the language of the gun control statute is necessarily ... a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the state.

Similarly, whether Giardina was committed to a mental institution is a question of federal law, but in making that determination we may seek guidance from state law. Was Giardina committed under Louisiana law? If he was not, is that answer consistent with federal policy?

An understanding of Louisiana's present Mental Health Law may best be achieved by reviewing its prior statutory scheme which provided for a "coroner's commitment."[2] The prior statute, La.R.S. 28:52,

---

**1.** Section 922(g) is a consolidation of former 18 U.S.C. §§ 922(d), 922(g), 922(h), and 1202 (18 U.S.C.App.). *See* Firearm Owner's Protection Act, Pub.L. No. 99–308, § 102(6)(D), 100 Stat. 449, 452 (1986), and H.R.Rep. No. 99–495, 99 Cong., 2d Sess. 23, *reprinted in* 1986 U.S.Code Cong. & Ad.News 1327, 1349.

**2.** Prior to its revision and reenactment, Louisiana's Mental Health Law provided for a coroner's commitment under R.S. 28:52 as follows:

Any near relative, or in the absence of relatives, a near friend, curator, or other responsible person shall apply to the coroner to have a patient *committed* to an institution.

The application shall be in writing on the form prescribed by the department and shall give the name, sex, and residence of the patient, the reason why institutional care is needed, and any other information the department deems necessary. It shall be accompanied by a certificate of the coroner and one other qualified physician stating that they have examined the patient within three days of the application and that he is in need of observation or care in an institution. The

certificate shall state the facts and sources of information and personal observations upon which opinion is based. The coroner and the physician shall certify that they are not related by blood or marriage to the patient or to the applicant and that they are not connected, except in a professional capacity, with the institution to which the patient is to be *committed*. The examination of the patient shall be held at a place not likely to have a harmful effect upon his condition. After complying with the above provisions the application for *commitment* shall be presented to the judge of the judicial district court or the civil district court for the parish from which the patient is to be *committed*, for his approval or disapproval. The application for *commitment* can be acted upon by the judge in open court or in chambers, in term time or in vacation, without the necessity formally docketing and allotting said application.

The superintendent may admit the patient to the institution within fourteen days of the examination by the coroner and the physician.

repeatedly used the word "commitment." In applying the statute in *Burns v. Genovese*, 211 So.2d 336, 337 (La.App.1968), *rev'd on other grounds*, 254 La. 237, 223 So.2d 160 (1969), the court concluded that the detention did not constitute a commitment until the court formally acted. The intermediate appellate court reasoned:

Under the provisions of LSA–R.S. 28:52 et seq., *the actual commitment of the subject person is under an order of the district judge* after the accomplishment of certain procedural requirement as detailed in the cited sections of the revised statutes. Even under the provisions of the coroner's commitment on order of the district court, the coroner is authorized to and may retain the patient by confining him in any state hospital or parish jail or private mental hospital for a period not to exceed thirty days or until *he is actually committed or ordered released by the district court* (emphasis added).

As revised and reenacted, the Louisiana Mental Health Law reflected the reasoning of the *Burns* court and conspicuously avoided use of the words "commitment" and "committed." In lieu thereof La.R.S. 28:53 uses the terms "admission" and "detained." With one exception,[3] the amended statute reserves the use of the word commitment for R.S. 28:54 which details the procedure for the formal judicial commitment. The provision formerly entitled "Coroner's Commitment" is now entitled "Admission by Emergency Certificate."

In its present form, R.S. 28:53 provides that "[a] mentally ill person or a person suffering from substance abuse may be *admitted* and *detained* at a treatment facility for observation, diagnosis, and treatment for a period not to exceed fifteen days under an emergency certificate." La.

R.S. 28:53(A)(1) (emphasis added). This emergency certificate may be issued by a physician, but only after an actual examination and a determination that the person is dangerous to himself or others. § 28:53(B). The examining physician is required to issue a physician's emergency certificate within 72 hours of the initial examination, detailing the objective findings that lead to the conclusion that detention is necessary. § 28:53(B)(2). For the physician's emergency certificate to be effective, it must demonstrate that "the person is unwilling or unable to seek voluntary admission." § 28:53(B)(5).

The physician's emergency certificate provides "legal authority to transport a patient to a legal treatment facility and shall permit the director of such treatment facility to detain the patient...." § 28:53(F). Within 72 hours of this initial admission, however, a second examination by the coroner is a "necessary precondition to the person's continued confinement." § 28:53(G)(2). A patient may be "detained at a treatment facility for observation, diagnosis, and treatment for a period not to exceed 15 days...." § 28:53(A)(1). Patients confined by an emergency certificate may be subjected to "medication and treatment without their consent...." § 28:53(K). It is significant to note that to extend this involuntary detention beyond 15 days there must be a judicial commitment pursuant to La.R.S. 28:54.

A review of Louisiana's admission by emergency certificate procedure reflects its magnitude, but it also clearly reflects that this procedure does not constitute a commitment under Louisiana law. Therefore, unless this conclusion is inconsistent with federal policy, there has been no violation of § 922(g) by Giardina.

---

After fourteen days the certificate of examination of the coroner and the physician is invalid.

Any detentions, confinements of *commitments made by the coroner* under the above recited circumstances are hereby declared to be administrative acts attached to the functions of his office as required by law and for which acts he is specifically granted personal immunity, but not relieved of his official re-

sponsibility in his capacity as coroner (emphasis added).

**3.** The one exception is the reference in R.S. 28:53 to the initial physician's emergency certificate as "the first emergency commitment certificate," R.S. 28:53(G)(3). In light of the entirety of the revised statute, it is apparent that this use was either inadvertent or the use of a familiar cognomen.

This leads to an examination of relevant federal rubrics and policy. This being a criminal statute, we "follow the familiar rule that criminal statutes are to be strictly construed and give to '[committed]' its narrow meaning...." *Yates v. United States*, 354 U.S. 298, 310, 77 S.Ct. 1064, 1072, 1 L.Ed.2d 1356 (1957).

The congressional intent in enacting the federal gun control law was noted in *Huddleston v. United States*, 415 U.S. 814, 824, 94 S.Ct. 1262, 1268–69, 39 L.Ed.2d 782 (1974), wherein the Supreme Court stated:

> The principal purpose of the federal gun control legislation ... was to curb crime by keeping "firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency."

We agree with our colleagues of the Eighth Circuit, however, that "[t]here is nothing in 18 U.S.C. § 922(h) [now § 922(g)] which indicates an intent to prohibit the possession of firearms by persons who had been hospitalized for observation and examination, where they were found not to be mentally ill. The statute makes it clear that a commitment is required." *United States v. Hansel*, 474 F.2d 1120, 1123 (8th Cir.1973).

In *Hansel*, the court observed that the government was correct to concede on appeal that the defendant was not committed for purposes of § 922 inasmuch as there had been no commitment under state law. The *Hansel* court noted that "the scope of the Mental Health Board's order hospitalizing the defendant was limited to 'authorizing the superintendent of the hospital to receive and keep the person as a patient for a period of observation, not to exceed sixty days....'" *Hansel*, 474 F.2d at 1123 (emphasis in original and citation omitted). The state statute did not characterize the involuntary detainment as a commitment, thus the court found no commitment for purposes of a § 922 violation.

In *Dickerson* the Supreme Court at least indicated the need for a formal, unequivocal action of commitment. Temporary, emergency detentions for treatment of mental disorders or difficulties, which do not lead to formal commitments under state law, do not constitute the commitment envisioned by 18 U.S.C. § 922. An essential element of that federal offense is either a formal adjudication that a person suffers a mental defect, or a formal commitment, which latter, in the instance of Louisiana, requires formal action by the state district court.

There being no judicial commitment in the case at bar, there is no violation of 18 U.S.C. § 922. Accordingly, Giardina's conviction and sentence are VACATED and the indictment is DISMISSED.