UNITED STATES of America,
Plaintiff,

v.

David Michael VERTZ, Jr., Defendant.

No. 1:00–CR–26.

United States District Court,
W.D. Michigan,
Southern Division.

May 30, 2000.

Paul J. Denenfeld, Asst. Fed. Defender, Federal Public Defender, Grand Rapids, MI, Patrick Allen Dougherty, Patrick A. Dougherty, Manistee, MI, for David Michael Vertz, defendant.

## OPINION

ROBERT HOLMES BELL, District Judge.

This matter comes before the Court on Defendant David Michael Vertz, Jr.'s motion to dismiss the indictment.

David Vertz was indicted in a superseding indictment on one count of possession of firearms by a person who had been adjudicated as a mental defective and who had been committed to a mental institution, in violation of 18 U.S.C. § 922(g)(4),[1]

---

1. Section 922(g)(4) provides in pertinent part that it shall be unlawful for any person "who has been adjudicated as a mental defective or who has been committed to a mental institution" to possess in or affecting commerce, any firearm or ammunition.

and one count of knowingly making false and fictitious statements on firearms transaction records, ATF form 4473, intending and likely to deceive the licensed dealer with respect to a fact material to the lawfulness of the sale, in violation of 18 U.S.C. § 922(a)(6). Specifically, Count II of the superseding indictment charges that Defendant falsely answered in the negative to question (f): "Have you ever been adjudicated mentally defective or have you been committed to a mental institution?"

Defendant contends that there is no evidence that he was ever adjudicated a mental defective, or that he was ever committed to a mental institution, and that he is therefore entitled to dismissal of the charges against him. Although the government need only show one or the other, the government contends that it has evidence supporting both that Defendant was adjudicated mentally defective and that he was committed to a mental institution.

The government has presented substantial evidence that from as early as 1977 to as recently as 1997 Defendant Vertz's treating doctors have periodically and consistently diagnosed him with personality disorders and psychological problems, including post-traumatic stress disorder, schizo-affective disorder, dysthymia (or depressive neurosis) secondary type, neurotic depression, paranoid personality disorder, and anti-social personality disorder. He was found to be permanently medically disqualified for military service due to psychiatric reasons, and he is currently receiving VA benefits for a service connected psychiatric disability.

Despite the extensive medical evidence of mental illness, for purposes of criminal liability under the federal firearms statute, it is not sufficient that the defendant has been diagnosed as mentally ill by his treating physicians. The statute specifically requires that the individual have been "adjudicated as a mental defective" or "committed to a mental institution." 18 U.S.C. § 922(g)(4).

The term "mental defective" is not defined in the firearms statute. Defendant contends that the statute must accordingly be construed narrowly, and the term given its general meaning of subnormal intelligence or feeble mindedness. *See United States v. Hansel,* 474 F.2d 1120 (8th Cir. 1973).

The government contends that for purposes of the statute, an adjudication of mental illness is equivalent to an adjudication of mental defectiveness.

This Court declines to follow *Hansel, supra,* which was decided before the enactment of the Federal Firearms Regulations. Although the firearms statute does not define "mentally defective," the term is defined in the Federal Firearm Regulations found at 27 C.F.R. § 178.11(a):

> Adjudicated as a mental defective. (a) A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease:
>
> (1) Is a danger to himself or to others; or
>
> (2) Lacks the mental capacity to contract or manage his own affairs.

27 C.F.R. § 178.11.

 The government contends that Vertz has been adjudicated mentally defective. The only adjudication the government has presented, however, is the 1988 adjudication by Probate Judge Luke Quinn that Vertz was a person requiring treatment because he is mentally ill. This adjudication is not sufficient to bring Vertz within the statute. The probate court made no finding that Vertz was a danger to himself or others or that he lacked the mental capacity to contract or manage his own affairs. Accordingly, the government has presented no evidence that Vertz has been adjudicated mentally defective.

The Court turns to the government's alternative argument that Defendant Vertz has been "committed to a mental institution." The government has presented evi-

dence of two involuntary hospital admissions. On September 10, 1988, Defendant Vertz was admitted to the Ypsilanti Regional Psychiatric Hospital pursuant to a petition signed by a registered nurse at the psychiatric unit of McLaren Hospital stating that he was agitated, was threatening to leave the psychiatric unit against medical advice, and that he was threatening to kill himself. The petition was accompanied by a physician's certificate signed by Dr. Yoo. Dr. Yoo certified that Vertz was mentally ill, that he presented a likelihood of injury to self and others, that he did not understand his need for treatment, and that he required treatment. Defendant Vertz consented to treatment pending his court hearing on the petition for hospitalization. Dr. Magoon filed a similar certificate on September 12, 1988, certifying that Defendant Vertz was a danger to himself, that he was unable to attend to his basic physical needs, and that he did not understand his need for treatment. Dr. Magoon also concluded that Defendant Vertz was a person requiring treatment and recommended that he be hospitalized.

At the court hearing on September 15, 1988, the Genesee County, Michigan Probate Court adjudicated defendant mentally ill. The probate court found that Defendant Vertz "is a person requiring treatment because the individual is mentally ill." This probate court order did not, however, result in a hospital commitment. The court found that there was "an available treatment program other than hospitalization appropriate to meet the individual's treatment needs." Defendant Vertz was accordingly discharged from the Ypsilanti hospital.

Defendant was involuntarily hospitalized again in 1993. On June 14, 1993, J. William Lauman, a police officer, signed a petition for hospitalization. He alleged that Vertz was threatening to kill the president and was a person requiring treatment. Dr. Yoo signed a physicians certificate certifying that Vertz is mentally ill, that he poses a likelihood of injury to others, and that he is a person requiring treatment. Defendant was involuntarily admitted to Hurley Medical Center. He was discharged by Dr. Siegel on June 17, 1993.

The issue arises as to whether one or both of these two involuntary hospitalizations satisfy the commitment requirements of the statute. The issue of whether a person has been committed to a mental institution is a question of federal law. *United States v. Giardina*, 861 F.2d 1334, 1335 (5th Cir.1988). The statute does not define the term "committed to a mental institution." The Federal Firearm Regulations does, however, contain the following definition:

> Committed to a mental institution. A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.

27 C.F.R. § 178.11.

In addition, because most prior commitments will have occurred pursuant to state law, courts seek guidance from state law in resolving the federal question of whether an individual has been committed to a mental institution. *Giardina*, 861 F.2d at 1335. *See also United States v. Hansel*, 474 F.2d 1120, 1122–23 (8th Cir.1973) (looking to state law).

Defendant directs the Court's attention to *Giardina* as authority for finding that Defendant's involuntary hospitalizations did not constitute commitments. In *Giardina* the defendant was involuntarily hospitalized upon the certificates of two physicians, held for treatment for two weeks, and then released. Under the Louisiana

statute any involuntary detention beyond fifteen days had to be by a judicial commitment. The Fifth Circuit determined that the hospitalization did not constitute a commitment under federal law because no judicial commitment had ever occurred. 861 F.2d at 1334–35.

The trend of recent cases is to focus on the fact that adjudication as mentally ill and commitment to a mental hospital are two separate and distinct prongs of the federal firearms statute. Courts are now looking to the substantive effect of the hospitalization rather than formal compliance with all of the specific requirements of the state mental health statute. In *United States v. Waters*, 23 F.3d 29, 31 (2d Cir.1994), the court held that the defendant's involuntarily hospitalization based upon two physician's certificates was a commitment within the meaning of the federal gun control statute. The Second Circuit rejected the requirement of a formal judicial proceeding to establish a "commitment" for federal purposes. In *United States v. Midgett*, 198 F.3d 143 (4th Cir.1999), the Fourth Circuit held that a determination that the defendant was not competent to stand trial and an order that he be confined to a hospital to restore him to mental competency, was a commitment within the meaning of 18 U.S.C. § 922(g)(4) despite a lack of adherence to the specific requirements of Virginia's civil commitment statute. *Id.* at 146.

The First Circuit considered the significance of an emergency hospitalization on a defendant charged with a violation of 18 U.S.C. § 922(g)(4) for possession of a firearm by a person who has been "committed to a mental institution." *United States v. Chamberlain*, 159 F.3d 656 (1st Cir.1998). The defendant in *Chamberlain* had been involuntarily admitted for five days, on an emergency basis, to a mental hospital. He moved to dismiss the federal firearms charge, contending that his involuntary emergency admission was not, as a matter of law, a "commitment" to a mental institution as required for conviction under

§ 922(g)(4). The First Circuit disagreed. The court held that the five day preliminary involuntary hospital admission was a "commitment" under federal law, even though Chamberlain thereafter voluntarily submitted to treatment at the hospital. The court reasoned that requiring a judicial commitment would essentially write out of the statute the statutory language denying firearms to those who have been committed to a mental institution:

> Moreover, to treat [a detention after a full hearing and an order of commitment section 3864 detention] as the only "real" commitment would come close to limiting "commitments" to cases in which a person has actually been "adjudicated a mental defective" after an adversary hearing. 18 U.S.C. § 922(g)(4) separately bans persons who have been "adjudicated a mental defective" from owning firearms, in addition to those who have been "committed to a mental institution." In denying firearms to those "committed to a mental institution," Congress appears to have cast a wider net—to "maximize the possibility of keeping firearms out of the hands of [, among others, persons suffering from mental illness]." See 114 Cong.Rec. 21784 (1968) (remarks of Congressman Celler). Requiring an adversary hearing and a judicial finding of mental illness would conflate two of the categories Congress singled out for the firearms prohibition.

*Chamberlain*, 159 F.3d at 664. The First Circuit emphasized that the *potential* for misuse of firearms or violence is sufficient to bring various categories of individuals within the firearms ban:

> To require a full-scale adversary proceeding and a finding, by clear and convincing evidence, that a person is mentally ill and poses a likelihood of harm to himself or others before giving effect to the firearms ban would undermine Congress's judgment that risk or potential, not likelihood, probability, or certainty, of violence is all that is required.

Nor does it appear that Congress intended that only persons conclusively found to be suffering from mental illnesses or difficulties after having been afforded the fullest possible panoply of due process rights be deemed to have been "committed to a mental institution" for purposes of the firearms ban. That level of formality is not required for most of the categories Congress identified as within the firearms ban, including those who have merely been indicted for a crime. See 18 U.S.C. § 922(n). When Congress has intended that a particular status triggering the firearms ban be conditioned upon notice and the opportunity to be heard, along with other procedural rights, it has stated so explicitly.

*Chamberlain,* 159 F.3d at 664 (footnote omitted).

With these considerations in mind, the Court looks at Defendant Vertz's involuntary hospitalizations within the context of Michigan's mental health statute. Under Michigan law, a person may be involuntarily hospitalized upon the filing of a petition and a physician's or licensed psychologist's clinical certificate. M.C.L. § 330.1423; M.S.A. § 14.800(423). If a patient is hospitalized under § 423, the patient must be examined within 24 hours by a different psychiatrist than the one upon whose certificate the patient was hospitalized. M.C.L. § 330.1430; M.S.A. § 14.800(430). If the psychiatrist certifies that the patient is a person requiring treatment, the patient's hospitalization may continue pending court hearings. If the psychiatrist does not certify that the patient is a person requiring treatment, the patient shall be released immediately. *Id.*

Based upon the fact that Defendant Vertz's 1988 hospitalization was supported by a second psychiatrist's certification, the Court finds that this hospitalization qualified as a commitment to a mental institution under the federal firearms statute.

Accordingly, the Court finds sufficient evidence to support the indictment, and the Court denies Defendant Vertz's motion to dismiss.

### ORDER

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Defendant David Michael Vertz, Jr.'s motion to dismiss (Docket # 21) is **DENIED.**