UNITED STATES of America

v.

David McFADDEN, Defendant

No. CR.02–38–P–C.

United States District Court,
D. Maine.

July 29, 2002.

Helene Kazanjian, Esq., Office of the U.S. Attorney, Portland, ME, for U.S.

Nicholas J.K. Mahoney, Esq., Thompson, Bull, Furey, Bass & MacColl, LLC, P.A., Portland, ME, for David Wayne McFadden.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Defendant is before this Court on an Indictment by a grand jury (Docket No. 1) charging him with two counts of violation of federal firearms laws. In Count I, he is charged with knowingly making a false statement in connection with the purchase of firearms by answering in the negative as to a question on ATF Form 4473 inquiring whether he had ever been committed to a mental institution, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). In Count II, he is charged with possession of firearms "having been committed to a mental institution," in violation of 18 U.S.C. §§ 922(g)(4) and 924(a)(2). Trial was held in the matter after Defendant waived a jury herein.

### I. COUNT II

On the basis of the record made at trial, the Court makes the following findings of fact:

(1) Rusk State Hospital in Rusk, Cherokee County, Texas is a "mental institution" within the scope of 18 U.S.C. § 922(g)(4).

(2) Defendant was presented on February 20, 1998, at Rusk State Hospital on a Mental Health Warrant For Emergency Detention issued by a Texas Magistrate, Joe Chandler, and

on an Application for Detention of a Person as Mentally Ill made by a Texas peace officer. Government's Exhibit No. 1.

(3) Defendant was examined by a physician, pursuant to Texas law, on February 20, 1998, upon his presentation at Rusk State Hospital, which physician certified "that I am of the opinion that the patient is mentally ill, and that as a result of that illness the patient meets at least one of the following additional criteria: ... [1] is likely to cause serious harm to others; or ... [2] will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment." He also further certified "that I am further of the opinion that the patient presents a substantial risk of serious harm to himself or others if not immediately restrained, which is demonstrated by: ... the person's behavior; or ... by evidence of severe emotional distress and deterioration in his mental condition to the extent that the person cannot remain at liberty." Government's Exhibit No. 2.

(4) Pursuant to Texas law, Defendant was detained at Rusk State Hospital for provision to him of mental health services.

(5) Pursuant to Texas law, a judge of the Cherokee County Court, on February 23, 1998, issued its own motion for Defendant to be held in protective custody, stating: "It appearing to the Court that said Applicant alleges that the proposed Patient is mentally ill and meets the criteria for court ordered mental health services; and it also appearing that ... the certifying physician has stated detailed basis for the physician's opinion that the proposed Patient is mentally ill, meets the criteria for court-ordered mental health services and presents a substantial risk of serious harm to self or others if not immediately restrained ...." Government's Exhibit No. 3. The judge further finds that the conclusions and beliefs of the Applicant and certifying physician "are adequately supported by the information." *Id.*

(6) A judge of the Cherokee County Court issued an Order of Protective Custody on its said motion dated February 23, 1998, in which the court found, after having considered the Application, motion, and certificate of the physician and having taken further evidence, if any was needed for a fair determination of the matter, "that the conclusion and beliefs of the Applicant, movant and certifying physician are adequately supported by the information presented." Government's Exhibit No. 4. Accordingly, the court ordered that the Defendant be "detained according to law" at Rusk State Hospital. *Id.*

(7) A probable cause hearing was held under Texas law on February 26, 1998, by a hearing officer of the Cherokee County Court, Deborah McKnight, resulting in a finding at noon on that day "that an adequate factual basis exists for probable cause to believe that the proposed patient presents a substantial risk of serious harm to self or others such that (s)he cannot be at liberty pending the commitment hearing on

court-ordered mental health services . . . ." Government's Exhibit No. 7. The hearing officer accordingly ordered that Defendant be detained in protective custody subject to the provisions of the Texas Mental Health Code.

(8) Defendant was released from Rusk State Hospital on February 26, 1998, at 3:30 p.m., on the decision of his treating physician, and the proceedings for his detention on the original Application were dismissed by an order of the Cherokee County Court entered on March 3, 1998. Government's Exhibit No. 10.

(9) Defendant was involuntarily detained at Rusk State Hospital from February 20, 1998, to February 26, 1998, at 3:30 p.m. on the basis of the opinions of the examining physician and the findings aforesaid of the Cherokee County Court.

This Court **CONCLUDES** that the described proceedings show Defendant to be, because of such proceedings in Cherokee County, Texas, at the time of his possession of weapons, as that was alleged in Count II of the Indictment, a person within the scope of the broad "prohibition against ownership of firearms by 'mentally unstable' or 'irresponsible' persons," enacted by 18 U.S.C. § 922(g)(4). *United States v. Waters,* 23 F.3d 29 (2d Cir.1994); *see also United States v. Chamberlain,* 159 F.3d 656, 660 (1st Cir.1998).

On the basis of the foregoing findings and conclusions, the Court **ADJUDICATES** the Defendant to be guilty as charged on the proof adduced by the Government of the offense charged against him in Count II of the Indictment and **ENTERS** a verdict of **GUILTY**.

## II. COUNT I

With respect to Count I of the Indictment, the Court **ENTERS** a verdict of **NOT GUILTY**. Defendant is therein charged with having *intentionally* made a false statement that he had not been "committed" to a mental institution. There is no evidence in the record from which the Court can conclude, beyond a reasonable doubt or otherwise, that this Defendant *knew* that the proceedings he had undergone in Cherokee County, Texas constituted a commitment under the provisions of the statute pursuant to which he is charged with that offense. The most that can be said from the evidence is that he knew that he had been through a proceeding in Texas resulting in his detention at a mental institution.

There is nothing to show, however, that thereafter at any time he was advised or otherwise came by knowledge that those proceedings and that detention constituted a commitment under the federal statute. Indeed, it is appropriate to note that various panels of federal appellate judges cannot agree as to whether particular emergency detention proceedings on the basis of alleged mental illness constitute "commitments" under the federal statute. *United States v. Midgett,* 198 F.3d 143 (4th Cir.1999); *United States v. Chamberlain,* 159 F.3d 656 (1st Cir.1998); *United States v. Waters,* 23 F.3d 29 (2d Cir.1994); *Contra; United States v. Hansel,* 474 F.2d 1120 (8th Cir.1973); *United States v. Giardina,* 861 F.2d 1334 (5th Cir.1988). It strains to far to expect, in the absence of clear proof of his knowledge of that fact, that this Defendant would have a discrete understanding at the time he executed the affidavit in question that the *circumstances* of the prior Texas proceedings constituted a commitment which required him to answer the pertinent question in the affirmative or be guilty of a felony offense.

### III. CONCLUSION

The Court **ORDERS** that the customary Presentence Investigation Report be prepared in accordance with the applicable Local Rule.