**Frank E. LITTLE, Petitioner**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on briefs April 29, 2011.

Decided Aug. 10, 2011.

Publication Ordered Oct. 20, 2011.

Reargument Denied Sept. 30, 2011.

---

Frank E. Little, pro se.

John J. Herman, Assistant Counsel, Harrisburg, for respondent.

OPINION PER CURIAM.

Frank E. Little (Little) petitions for review from an order of an Administrative Law Judge (ALJ), appointed by the Office of Attorney General (OAG), upholding the denial of Little's application to purchase a firearm.[1] At issue is whether Little's

1. Little is representing himself in this proceeding. He is an attorney who was formerly

court-ordered stay in a state hospital for mental health treatment and evaluation prior to criminal sentencing precludes his purchase of a firearm because he was "committed to a mental institution" under Section 922(g)(4) of the Federal Gun Control Act of 1968 (Federal Act) 18 U.S.C. § 922(g)(4). Under the facts of this case, we conclude his treatment and evaluation constitute a disqualifying commitment. Accordingly, we affirm the ALJ's order.

## I. BACKGROUND

In September 2008, Little attempted to purchase a firearm. An examination of Little's criminal history through the Pennsylvania Instant Check System (PICS) revealed a possible domestic violence matter that could disqualify him from purchasing the firearm. Notes of Testimony before ALJ, 3/22/2010 (N.T.), at 19. Little's application to purchase the firearm was denied.

In October 2008, Little filed a PICS challenge with the Pennsylvania State Police (PSP). In May 2009, PSP informed him his challenge was denied in relevant part because his "involuntary commitment in 1993 is prohibiting" under 18 U.S.C. § 922(g)(4). Letter from PSP to Little (5/18/2009) (Denial Letter). Little appealed this decision pursuant to Section 9152 of the Criminal History Record Information Act, 18 Pa.C.S. § 9152.

A hearing was convened before the ALJ. At the hearing, a PSP investigator dis-

cussed research into Little's background. The investigator explained his initial PICS review suggested a disqualifying domestic relations incident. N.T. at 19. PSP inquired further with the Allegheny County Court of Common Pleas (trial court) and obtained additional records.

PSP determined Little was charged with simple assault (misdemeanor 2) arising from Little's allegedly pushing his mother-in-law down a set of stairs, causing bodily injury. *Id;* Information; Criminal Complaint. Ultimately, Little was found guilty of this crime. The investigator acknowledged the conviction could not be classified as disqualifying domestic violence since it involved Little's mother-in-law and not his wife. N.T. at 20.

However, the investigator testified that Section 922(g)(4) of the Federal Act applied because it precludes persons "involuntarily committed to a mental institution" from acquiring guns. N.T. at 30–31. The investigator discovered a subsequent trial court order, issued prior to Little's sentencing, which directed that Little be "*committed to Mayview State Hospital* for a period not to exceed 90 days" pursuant to "Section 405 of the Mental Health Procedures Act of 1976 [ (MHPA) ]." [2] Tr. Ct. Order 9/1/1993; N.T. at 21, 27–28; Reproduced Record (R.R.) at 132a (emphasis added). The trial court based its commitment order on a psychiatrist's recommen-

---

licensed to practice in Pennsylvania.

**2.** Section 405 of the Mental Health Procedures Act (MHPA), Act of July 9, 1976, P.L. 817, *as amended*, 50 P.S. § 7405, provides: Examination Before Imposition of Sentence. Whenever a person who has been criminally charged is to be sentenced, the court may defer sentence and order him to be examined for mental illness to aid it in the determination of disposition. This action may be taken on the court's initiative

or on the application of the attorney for the Commonwealth, the person charged, his counsel, or any other person acting in his interest. If at the time of sentencing the person is not in detention, examination shall be on an outpatient basis unless inpatient examination for this purpose is ordered pursuant to the civil commitment provisions of Article III.
50 P.S. § 7405.

dation that treatment and evaluation might be helpful.

The trial court set forth two purposes behind the commitment: to obtain "a psychiatric/psychological examination as an aid to the court in sentencing;" and, to have the hospital's treatment team "plan [an] appropriate course of treatment to include psychotropic medications, therapy and any other therapeutic modality they deem appropriate." Tr. Ct. Order 9/1/1993; R.R. at 132a.

The investigator stated the trial court's action constituted a commitment under Section 922(g)(4) of the Federal Act. It therefore precluded Little from purchasing a firearm. *See* Denial Letter.

At the hearing, Little did not dispute he was at the state hospital for a time. He also did not testify his stay was voluntary. Instead, he argued he was not actually committed to the state hospital, but was merely placed there for evaluation. He argues this distinction is crucial. Thus, his state hospital stay was not disqualifying under the Federal Act.

■ Citing federal and state authority, the ALJ concluded Little was involuntarily committed to a mental hospital by the trial court and was therefore disqualified from purchasing the firearm. Accordingly, the ALJ affirmed PSP's decision. Little appeals.[3]

## II. PROCEEDINGS BEFORE THIS COURT

Little identifies four issues in his appeal: 1) whether an examination in aid of sentencing prohibits a firearms purchase under the Federal Act; 2) whether there was a legal and factual basis to deny Little's firearms purchase application under PICS; 3) whether Little was denied due process by PSP's failure to abide by deadlines and to timely supply him with information concerning his case and, 4) whether Little was denied due process by erroneous conduct and rulings of OAG.

■ In its Counterstatement of Questions Involved, PSP responds to the first issue. It also inserts a lengthy footnote in which it contends the other three issues are not properly before this Court. In its brief, PSP addresses the first issue.[4]

3. Our review is limited to a determination of whether necessary findings were supported by substantial evidence, an error of law was committed or whether constitutional rights were violated. *Pa. State Police v. Viall*, 774 A.2d 1288 (Pa.Cmwlth.2001).

4. Each party filed an application for special relief with this Court. By *per curiam* order, both applications were reserved for disposition with the merits.

·Little seeks to quash PSP's brief because the "dastardly footnote" to PSP's counterstatement of question involved is "so overwhelmingly egregious ... that only the highest degree of sanctions is appropriate." Little's Application to Quash at 2. We disagree with Little that errors in PSP's brief are of an egregious character. PSP sought to explain why several of Little's issues are not appropriately before the Court. This is

a relevant consideration. Any deficiencies in the manner in which these issues were raised are neither significant nor prejudicial. This is particularly true since PSP raises similar arguments in its motion for special relief. Accordingly, we deny Little's application for special relief.

PSP moves to strike three documents from the reproduced record that were not included in the certified record. PSP argues Little relies on these documents for his third and fourth issues. PSP seeks to quash the appeal, or to suppress the offending documents from the reproduced record and strike Little's issues three and four. PSP's arguments are similar to the arguments it raised in the footnote.

Little previously sought to include these documents in the certified record for appeal. In our Order of January 21, 2011, we denied his request, explaining that "after a thorough review of the certified record" we concluded

■ The legal theories underlying Little's arguments are at times difficult to discern because they are buried between hyperbole and *ad hominem* attacks directed at PSP, the ALJ, and seemingly the entire judicial system. We previously quashed an appeal containing similar arguments because it failed to state a meaningful basis for review. *Kochan v. Commonwealth,* 768 A.2d 1186 (Pa.Cmwlth.2001). Our description of the brief in *Kochan* aptly describes Little's brief here:

> Even though Appellant's argument is 'divided into as many parts as there are questions to be argued,' it is nevertheless devoid of any substance.... Even though Appellant may have set forth the propositions for which the cases he cites allegedly stand, he fails to relate the abstract to the concrete. His argument consists of a rambling discourse with innuendoes of unfairness void in substance of both law and fact. The argument reads, in effect, as a personal vendetta against the legal system, in general, and, specifically, against the trial court, PennDOT and other court officials whom Appellant holds personally responsible for his current predicament.

*Id.* at 1188 (citations omitted). Additionally, it appears issue two addresses a matter PSP conceded.[5] Based on these deficiencies, we conclude that Little failed to preserve all but the first stated issue.[6]

As to the first issue, the matter is significant, involving a constitutional right. This issue was the sole matter before the ALJ, it was thoroughly addressed by both parties before the ALJ, and it is the focus of the ALJ's opinion. Additionally, this issue is sufficiently developed by written argument to this Court. For these reasons, we are able to conduct meaningful appellate review of this issue.

## III. LITTLE'S COMMITMENT AS A DISQUALIFICATION UNDER THE FEDERAL ACT

Section 922 of the Federal Act disqualifies several categories of individuals from purchasing firearms. PSP contends Little's commitment for both treatment and an examination prior to sentencing disqualifies him from firearm purchases under Section 922(g)(4). Subsection (g)(4) disqualifies any individual "who has been adjudicated as a mental defective or who has been committed to a mental institution." 18 U.S.C. § 922(g)(4).

■ In response, Little argues, "Any notion [he] was the subject of a mental commitment under Section 405 is nonsensical bunk." Little's Br. at 13. He further argues, "[W]ithout a diagnosis of mental

"the certified record contains all exhibits the parties entered into evidence before the administrative law judge, and the hearing transcript is complete." *Id.* Based on this prior order, we grant PSP's motion to strike these items from the reproduced record. Nonetheless, we conclude quashing the appeal is too severe a sanction. We deny that request. We agree, however, that Little's argument on issues three and four should be stricken because he improperly relies on these documents.

5. Issue two apparently refers to the PSP's reliance on 18 Pa.C.S. § 6105, when it denied Little's challenge. PSP conceded this issue before the ALJ when it withdrew arguments based on Article III of the MHPA. N.T. at 42. This issue is not properly before us on appeal, because it was withdrawn from consideration of the ALJ.

6. Underlying each of the other issues is Little's complaint that PSP failed to issue its decision within the 60 day time period required by 18 Pa.C.S. § 9152. PSP attributed the delay to difficulties in obtaining Little's medical records because of federal medical record disclosure regulations. PSP's explanation for the delay is reasonable, and Little fails to explain prejudice from the delay.

illness, there can be no commitment to a mental institution. That is a concept that perhaps even the PSP and the [ALJ] can grasp." *Id.* at 17. Little summarizes his argument by the following, "Although the abusive judge in [Little's] prosecution ... sloppily used the word 'committed' under or pursuant to Section 405, Involuntary civil commitment can only be accomplished in Pennsylvania pursuant to Section 302, 303, or 304 of the MHPA." *Id.* at 13. Accordingly, Little contends the term "commitment" only applies to involuntary civil commitments under Article III of the MHPA.

■ The issue of whether a person is committed pursuant to Section 922(g)(4) is a question of federal law. *United States v. Chamberlain,* 159 F.3d 656 (1st Cir.1998); *United States v. Waters,* 23 F.3d 29 (2d Cir.1994); *United States v. Giardina,* 861 F.2d 1334 (5th Cir.1988). The federal statute does not define the term "commitment." The First Circuit in *Chamberlain* discussed the statutory phrase "committed to a mental institution" as follows:

> We believe that the proper interpretation of the phrase, 'committed to a mental institution,' should not turn primarily on the label attached by the state legislature to its procedures, but rather on the substance of those procedures. Thus, rather than focus on the nuances of state statutory language in interpreting 'commitment,' we look at the realities of the state procedures and construe them in light of the purposes Congress sought to accomplish by prohibiting firearm possession by someone who has been 'committed to a mental institution.'

*Id.* at 663. Accordingly, while the courts must "tak[e] into account whatever guidance state law may offer" as to the meaning of the term "commitment," the interpretation of Section 922(g)(4) "must ... be consistent with federal policy." *Chamber-*

*lain,* at 658. The policy behind the Act is to keep ownership of firearms away from "irresponsible" individuals. *Id.* (citing H.R. 17735, 90th Cong., 2d Sess. (1968), 114 Cong. Rec. 21780, 21791, 21832, and 22270 (1968); *Dickerson v. New Banner Inst., Inc.* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983)).

The trial court's commitment order here, entered after a proceeding which culminated in a determination of Little's guilt of a crime of violence, constitutes a "commitment" as that term is used in Section 922 of the Federal Act. There are three reasons supporting this conclusion: (1) the plain language of the trial court's orders; (2) the trial court's orders constituted a commitment under Pennsylvania law; and, (3) the trial court's orders are consistent with federal case law and with the policy behind the Federal Act.

First, the trial court used the verb "commit" in multiple orders related to the case. The trial court's September 1, 1993, Order provided in pertinent part:

> And now, to wit, this 1st day of September 1993, it appearing that [Little] was found guilty of the above charges [simple assault] with legal counsel present, Mark Clement, Esq. It further appearing to the court that on recommendation of Christine Martone, M.D. Director of the Behavior Clinic it would be desireable to have a psychiatric/psychological examination as an aid to the court in sentencing ... and pursuant to Section 405 of the [MHPA], *the defendant is committed to Mayview State Hospital* for a period not to exceed 90 days. Dr. Martone further recommends that the treatment team at Mayview State Hospital plan the appropriate course of treatment to include psychotropic medications, therapy and any other therapeutic modality they deem appropriate. Upon receipt

of this report, the defendant is to be called before this court for further disposition. Further proceedings in this matter shall be stayed.

Tr. Ct. Order 9/1/1993; R.R. at 132a–33a (emphasis added). Similarly, the trial court's October 5, 1993, Order releasing Little from the state hospital provided in pertinent part:

it appearing to the court that the above-named *defendant was committed to Mayview State Hospital* . . . under provisions of Section 405 of the Mental Health Procedures Act. . . . It further appearing to the court that now by report received from Mayview State Hospital, the defendant *has achieved maximum benefit of hospitalization, no longer requires inpatient care* and meets the criteria for sentencing. . . .

THEREFORE, it is ORDERED, ADJUDGED AND DECREED that *the above-named defendant be discharged from Mayview State Hospital into the custody of the Sheriff*. . . .

Tr. Ct. Order 10/5/1993 R.R. at 138a (emphasis added). In both cases, the trial court characterized Little's stay at the state hospital as a "commitment."

Interestingly, mental health officials at Mayview State Hospital also viewed Little's stay as a commitment. Thus, when the Director of the Regional Psychiatric Forensic Center wrote to the trial court to inform it of Little's discharge and availability for transfer, he stated that Little had been "committed under Section 405 of the [MHPA]." R.R. at 134a.

Second, Little's argument is incorrectly premised on the supposed requirement that his state hospital stay be an involuntary civil commitment under Article III of the MHPA. Federal cases, however, hold that a commitment need not arise from a state's involuntary civil commitment procedures; rather, a commitment may arise in a criminal context. *United States v. Midgett*, 198 F.3d 143 (4th Cir.1999), *cert. den.*, 529 U.S. 1028, 120 S.Ct. 1440, 146 L.Ed.2d 328 (2000).

Pennsylvania law recognizes that commitments to mental hospitals may take various forms. For instance, Article III of the MHPA establishes procedures for involuntary civil commitments. In contrast, Article IV provides procedures for commitments arising in a criminal context. Section 405 of Article IV addresses diagnostic commitments in aid of sentencing. 50 P.S. § 7405. Section 406 of Article IV addresses involuntary civil commitments following a diagnostic review. 50 P.S. § 7406. Section 407 discusses voluntary commitments of individuals charged with a crime. 50 P.S. § 7407.

Here, Little's commitment arose in the criminal context. Thus, Article IV of the MHPA applied. The trial court exercised its discretion under Section 405 of Article IV to commit Little to a mental health facility for examination in order to assist the trial court with sentencing.

Third, interpreting the trial court's actions as amounting to a disqualifying "commitment" under the Federal Act is consistent with the policy behind that statute. The Federal Act does not define commitment. Subsequent regulations interpret the phrase "committed to a mental institution" to not include "a person in a mental health institution for observation or a voluntary admission." 27 C.F.R. § 478.11. However, these regulations interpret "a commitment to a mental institution involuntarily" as falling within Section 922(g)(4). *Id.*

The record here shows the trial court involuntarily committed Little after a proceeding during which he was found guilty of committing a crime of violence and upon the preliminary recommendation of a psy-

chiatrist. Thus, Little was found guilty of simple assault on May 28, 1993. N.T. PSP Ex. 1, Certified Appellate Record Tab 15. The trial court continued Little's bond pending filing and consideration of post-trial motions. However, the trial court abruptly revoked Little's bond on August 26, 1993, "remanded [Little] to Jail," and noted Little was "to be sent to Mayview for a Sixty (60) Day Mental Evaluation." *Id.* The trial court's order of September 1, 1993, then formally committed Little to the state hospital for an examination as an aid for sentencing and for treatment. He was transported from the county jail to the state hospital in the custody of the sheriff's department. R.R. at 133a.

Little was receiving psychotropic medications *prior* to the trial court committing him to the state hospital. N.T. PSP Ex. 1, Certified Appellate Record Tab 15, Summary by psychiatrist Mralidhara S. Rao, M.D. and Howard P. Friday, Ph.D., Director of the Regional Psychiatric Forensic Center, 9/24/1993 at 2. During Little's commitment, the hospital continued to treat him with those psychotropic medications. *Id.* During this treatment, Little did not leave the state hospital, *id.* at 1–3, and he does not suggest that he was free to do so.

Additionally, the trial court released Little from the state hospital only after medical personnel concluded Little "will not further benefit from this inpatient psychiatric evaluation or *treatment.*" *Id.* at 3 (emphasis added). The trial court adopted the medical personnel's recommendations and explicitly noted that Little "achieved maximum benefit of hospitalization [and] *no longer require[d] inpatient care.*" R.R. at 138a (emphasis added). Based on that conclusion, the trial court released Little from Mayview, placed him in custody of the sheriff's department for re-imprison-

ment in the county jail, and then sentenced him.

The hospital stay here was clearly not of a voluntary nature, as it was sandwiched between two jail confinements and accomplished by deputy sheriffs. Also, the hospital stay went beyond mere observation. The trial court's commitment order not only sought an evaluation for sentencing. The order went further and directed a treatment program. Little received treatment at the state hospital, and he was released only after a medical determination that inpatient care was no longer required. That this treatment arose after a proceeding which resulted in a finding of Little's guilt of a crime of violence underscores the trial court's concern for health and safety.

For all these reasons, the facts here establish Little was "committed to a mental health institution" as that term is used in Section 922(g)(4) of the Federal Act. Accordingly, we conclude the ALJ did not err in affirming the denial of Little's application to purchase a firearm.

### ORDER

**AND NOW,** this 10th day of August, 2011, the order of the Administrative Law Judge is **AFFIRMED.** Additionally, the Pennsylvania State Police's application for special relief is **GRANTED IN PART and DENIED IN PART,** as more fully set forth in the attached opinion. Further, Frank E. Little's application for special relief is **DENIED.**