# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40465

United States Court of Appeals
Fifth Circuit

**FILED**
June 4, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

HEON JONG YOO, also known as Hank Yoo,

      Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:18-CR-16-1

Before DAVIS, GRAVES, and DUNCAN, Circuit Judges.

PER CURIAM:*

Heon Jong Yoo was convicted on eight counts under the Gun Control Act: seven counts of making a false statement to a federally licensed gun dealer, in violation of 18 U.S.C. § 924(a)(1)(A), and one count of possession of a firearm by a prohibited person, in violation of § 922(g)(4). Because the evidence was sufficient to establish each element of § 924(a)(1)(A), we AFFIRM Yoo's conviction as to Counts 1-7. But because Yoo was not "committed to a mental

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-40465

institution" within the meaning of § 922(g)(4), we REVERSE the judgment of conviction as to Count 8.

## I.   BACKGROUND

Heon Jong Yoo was involuntarily committed to treatment under New Jersey's temporary, ex parte procedure twice. First, in April 2013, Yoo agreed to be transported by the Rutgers University Police Department (RUPD) to a hospital for evaluation. There, a screener, a physician, and a psychiatrist determined that Yoo met the criteria for mental illness, was a danger to himself or others, and should be involuntarily committed to a mental institution. Based on their certifications, a New Jersey superior court judge found probable cause to believe that Yoo was in need of involuntary commitment. The judge issued a "Temporary Order for the Involuntary Commitment of an Adult," ordering that Yoo be committed to a hospital "pending a court hearing" in about two weeks. Yoo was discharged from the hospital four days before the scheduled hearing.

RUPD took Yoo to a hospital for another evaluation in September 2015. Once again, a screener, physician, and psychiatrist determined that Yoo met the criteria for mental illness and that he should be committed. And, once again, a New Jersey superior court judge ordered that Yoo be temporarily committed "pending a court hearing" 12 days later. Yoo was discharged six days before the scheduled hearing.

A few months later, in January 2016, Yoo tried to buy a gun. But because the National Instant Criminal Background Check System (NICS) revealed that Yoo had been "adjudicated as mental defective/committed to a mental institution," his purchase was denied. The FBI explained, upon Yoo's inquiry, that he was a "prohibited person" under one of the 10 possible categories listed in §§ 921 and 922, but did not specify which one applied.

2

No. 19-40465

Yoo kept trying (often successfully) to buy firearms from 2016-2017. Each time, he had to fill out the Form 4473 issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). In response to a question on that form, Yoo stated that he was a citizen of the United States seven different times. He correctly identified his country of citizenship as South Korea—not the United States—twice.

Ultimately, Yoo was convicted of eight crimes under the Gun Control Act: seven counts of making a false statement to a federally licensed firearms dealer, in violation of § 924(a)(1)(A) (Counts 1-7), and one count of possession of a firearm by a prohibited person, in violation of § 922(g)(4) (Count 8). Yoo timely appeals his conviction.

## II.    § 924(a)(1)(A)

To establish a violation of § 924(a)(1)(A), the Government must prove that: "(1) the dealer was a federally licensed firearms dealer at the time the events occurred; (2) the defendant made a false statement or representation in a record that the licensed firearms dealer was required by federal law to maintain; and (3) the defendant made the false statement with knowledge of its falsity."[1]

**A.**

First, Yoo argues the Government failed to establish that the gun dealers named in Counts 1-7 were federally licensed. Because this element is jurisdictional,[2] we must determine whether the evidence was sufficient to establish it.[3]

---

[1] *United States v. Pena*, 541 F. App'x 453, 455 (5th Cir. 2013) (quoting *United States v. Abramski*, 706 F.3d 307, 316-17 (4th Cir. 2013), *aff'd* 573 U.S. 169 (2014)).

[2] *United States v. Reid*, 595 F. App'x 280, 283 (5th Cir. 2014).

[3] *United States v. Schultz*, 17 F.3d 723, 725 (5th Cir. 1994).

No. 19-40465

The Government need not produce each dealer's federal license.[4] For example, we have held that an ATF agent's testimony that he "knew that the [dealer] was a licensed firearms dealer,"[5] and an employee's testimony that the dealer "had a valid license during the relevant period"[6] was enough.

Here, there was sufficient evidence that Superior Firearms, First Cash Pawn, Academy Sports, and Cash America Pawn were federal firearms licensees (FFLs) at the time of Yoo's offenses. The Form 4473 used by the dealers implicated in Counts 1-5 states on its face that "This form should only be used for sales of a firearm where the seller is licensed under 18 U.S.C. § 923." Moreover, the jury heard testimony from employees of each dealer about its status as an FFL.[7]

**B.**

Next, Yoo argues the evidence was insufficient to prove that he made a false statement by selecting "USA" in response to the Form 4473's "country of citizenship" question. An October 2016 revised version of the Form 4473 states that "Nationals of the United States" may select "USA." Yoo argues that the Government failed to prove he wasn't a U.S. national.

This argument only applies to Counts 6 and 7. The dealers associated with Counts 1-5 used the Form 4473 version revised in April 2012—and that version did *not* allow U.S. nationals to identify as U.S. citizens.

---

[4] *United States v. Frazier*, 547 F.2d 272, 273 (5th Cir. 1977).

[5] *Id.*

[6] *United States v. Ballard*, 18 F.3d 935 (5th Cir. 1994).

[7] The owner of Superior Firearms testified that "[w]e are a federal firearms licensed gun dealer," that he has "own[ed] the FFL" for nine years, and that, "as an FFL," Superior Firearms is required to keep each Form 4473. The jury heard testimony that only federally licensed dealers can submit the Form 4473 to the ATF for a background check, and the owner of Superior Firearms testified that he "got an immediate denial from the ATF." Employees testified that First Cash Pawn (involved in Counts 2, 3, and 4) is an FFL. Academy Sports employees (Count 5) also testified that it is in FFL. Likewise, employees of Cash America Pawn (Counts 6 and 7) testified that it is an FFL and that it is required to keep each Form 4473.

No. 19-40465

The Government produced evidence that a U.S. national is a person "who [was] born in the territories of the United States, specifically, American Samoa and the Commonwealth of Northern Mariana Islands."[8] Yoo argues now, as he did at trial, that a definition of "national" from the Immigration and Nationality Act should apply. Under that definition, a national is "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States."[9]

Yoo's argument fails under either definition. In *Omolo v. Gonzales*, we considered both definitions and held that "a person may become a national only by birth or by completing the naturalization process."[10] Yoo's administrative file, which was introduced into evidence, showed that he had not completed the naturalization process. Accordingly, the evidence was sufficient for the jury to find that Yoo was not a national of the United States.

**C.**

Recall that under § 924(a)(1)(A), it is a crime to make a false statement "with respect to the information required by this chapter to be kept in the records" of a federally licensed gun dealer. Yoo argues that an applicant's country of citizenship is not "information required by this chapter." Yoo is incorrect.

"This chapter" means chapter 44 of title 18 of the United States Code. A statute within chapter 44 directs gun dealers to "maintain such records . . . as the Attorney General may by regulations prescribe."[11] "Because of that statutory section, the information that the Attorney General's regulations compel a dealer to keep is information 'required by this chapter.'"[12] One of

---

[8] This definition derives from 8 U.S.C. § 1408.

[9] 8 U.S.C. § 1101(a)(22).

[10] 452 F.3d 404, 409 (5th Cir. 2006).

[11] 18 U.S.C. § 923(g)(1)(A).

[12] *Abramski v. United States*, 573 U.S. 169, 192 (2014).

those regulations instructs dealers to "obtain a 4473 from the transferee showing," among other things, "the transferee's country of citizenship[.]"[13] Moreover, since the regulations require that licensed dealers retain each Form 4473, "a false answer on that form . . . pertains to information a dealer is statutorily required to maintain."[14]

For these reasons, Yoo's convictions on Counts 1-7 of the superseding indictment are AFFIRMED.

### III.   § 922(g)(4)

Under § 922(g)(4), it is a crime for any person "who has been adjudicated as a mental defective or who has been committed to a mental institution" to "possess[,] in or affecting commerce, any firearm or ammunition."[15] Yoo argues he was not "committed" to a mental institution as a matter of law.[16]

Whether Yoo has been "committed" within the meaning of § 922(g)(4) is a question of federal law, but courts look to state commitment law for guidance.[17] In New Jersey, an action for commitment to treatment can be commenced by a screening service.[18] First, a mental health screener must determine whether the person meets the criteria for "mental illness" and whether they pose a threat to themselves, others, or property. If the screener finds that the person meets that standard and that there are no less restrictive alternatives, a "screening document" is prepared. Next, a physician evaluates the person and issues a "screening certificate" if it finds the same criteria

---

[13] 27 C.F.R. § 478.124(c)(1).

[14] *Abramski*, 573 U.S. at 192.

[15] 18 U.S.C. § 922(g)(4).

[16] Section 922(g)(4) does not define "committed," but ATF regulations provide the following guidance: "A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority . . . The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution." 27 C.F.R. § 478.11.

[17] *United States v. Giardina*, 861 F.2d 1334, 1335 (5th Cir. 1988).

[18] N.J. Ct. R. § 4:74-7.

satisfied.[19] Finally, a psychiatrist evaluates the person under the same standard, and if she agrees, issues a "clinical certificate."

The county adjuster presents the screening document, screening certificate, and clinical certificate to a New Jersey superior court judge, who "shall immediately review them in order to determine whether there is probable cause to believe that the person is in need of involuntary commitment to treatment."[20] If the court finds probable cause based on those documents, "it shall issue a temporary order authorizing the assignment of the person to an outpatient treatment provider or the admission or retention of the person in the custody of the facility . . . pending a final hearing."[21]

The final commitment hearing must take place within 20 days of the order of temporary commitment. At the final hearing, each patient has the right to be present, to be represented by counsel, to present evidence, and to cross-examine witnesses.[22] After that hearing, the court shall enter a final order of commitment if it finds "by clear and convincing evidence presented at the hearing that the patient is in need of continued involuntary commitment to treatment."[23]

Yoo went through the screening process twice. Both times, a New Jersey superior court judge found probable cause, based on the certificates completed by a screener, physician, and psychiatrist, to issue an order of temporary

---

[19] At this point, the person may be involuntarily admitted to a psychiatric unit, where they must be evaluated by a psychiatrist within 72 hours.

[20] N.J.S.A. § 30:4-27.10(f).

[21] N.J.S.A. § 30:4-27.10(g); *see also* N.J. Ct. R. 4:74-7(c) ("The court may enter an order of temporary commitment to treatment . . . pending final hearing if it finds probable cause, based on the documents filed . . . to believe that the person is in need of involuntary commitment to treatment").

[22] N.J.S.A. § 30:4-27.14.

[23] N.J. Ct. R. § 4:74-7(f)(1); *see also* § 4:74-7(e) ("No final order of commitment to treatment shall be entered except upon hearing conducted in accordance with the provisions of these rules").

commitment. But both times, Yoo was discharged before the final commitment hearing.

So, the question narrows to whether New Jersey's ex parte procedure for temporary orders of involuntary commitment constitutes "commitment to a mental institution" under § 922(g)(4). The only federal court to consider the issue (the District of Maine) said yes.[24] At the time, the First Circuit (where the district court was located) had held that temporary involuntary commitment without an adversarial hearing is "commitment" under the statute.[25]

The First Circuit overturned that line of cases in *United States v. Rehlander*.[26] There, both defendants had been hospitalized under Maine's ex parte, emergency procedure,[27] but were never committed under Maine's full-scale, adversarial procedure.[28] The court reasoned that, after *District of Columbia v. Heller*,[29] the right to possess a firearm "is no longer something that can be withdrawn by government on a permanent and irrevocable basis without due process."[30] And, in enacting § 922, "nothing suggests that Congress had in mind temporary hospitalizations supported only by ex parte procedures."[31] Accordingly, the court concluded that "section 922 should not be

---

[24] *United States v. Miller*, 366 F. Supp. 2d 128 (D. Me. 2005).

[25] *See United States v. Chamberlain*, 159 F.3d 656, 665 (1st Cir. 1998); *United States v. Holt*, 464 F.3d 101, 105-6 (1st Cir. 2006).

[26] 666 F.3d 45 (1st Cir. 2012).

[27] This procedure required (1) an application by a health officer or law enforcement officer, (2) a medical practitioner's certificate, and (3) endorsement by a judge that the application and certificate are "regular and in accordance with the law." Me. Rev. Stat. tit. 34-B, § 3863.

[28] The formal commitment procedure requires an adversary hearing, counsel for the patient and an opportunity to testify and to call and cross-examine witnesses. The court must determine whether there is clear and convincing evidence that the patient is mentally ill and poses a likelihood of serious harm, and whether better alternative arrangements exist.

[29] 554 U.S. 570 (2008) (announcing an individual constitutional right to possess a firearm).

[30] *Rehlander*, 666 F.3d at 48.

[31] *Id.* at 50.

read to encompass a temporary hospitalization attended only by [Maine's] ex parte procedures[.]"[32]

Similarly, we held that Louisiana's (slightly different) ex parte procedure for temporary involuntary hospitalization did not constitute "commitment" in *United States v. Giardina*.[33] At the time, Louisiana law allowed a "mentally ill person" to be involuntarily admitted for "observation, diagnosis, and treatment" for up to 15 days under an emergency certificate issued by a physician.[34] A court order was required to detain the person any longer. Like Yoo, Giardina was discharged before those 15 days were up. We concluded that "[t]emporary, emergency detentions for treatment of mental disorders or difficulties, which do not lead to formal commitments under state law, do not constitute the commitment envisioned by 18 U.S.C. § 922."[35]

We conclude that Yoo's temporary hospitalization based on an ex parte order, signed by a judge without a hearing, does not constitute "commitment to a mental institution" within the meaning of § 922(g)(4).[36] Accordingly, the judgment of conviction as to Count 8 is REVERSED.

## IV.  CONCLUSION

For these reasons, Yoo's conviction as to Counts 1-7 are AFFIRMED, and his conviction as to Count 8 is REVERSED.

---

[32] *Id.* at 49.

[33] 861 F.2d 1334 (5th Cir. 1988).

[34] *Id.* at 1336.

[35] *Id.* at 1337.

[36] *See also United States v. McIlwain*, 772 F.3d 688, 697 (11th Cir. 2014) (finding "commitment" where defendant "received a formal hearing, was represented by an attorney, and the state probate court heard sworn testimony and made substantive findings of fact that it included in its formal order of commitment"); *United States v. Hansel*, 474 F.2d 1120, 1123 (8th Cir. 1973) ("There is nothing in [§ 922(g)(4)] which indicates an intent to prohibit the possession of firearms by persons who had been hospitalized for observation and examination, where they were found not to be mentally ill").